

U. S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

JOSEPHINE AMATUCCI

   plaintiff

   V.

NORMAN BOLDUC
PAULINE MALONEY

   defendants

, 1:06-fp-225

JURY TRIAL DEMANDED

AWARD ATTORNEYS' FEES
AND COSTS PURSUANT TO
42 USC 1988 and RSA 507:15

INTRODUCTION

This case is presently before the court in a separate complaint involving two different defendants, namely, Police OfficerCharles Hamilton, and Police Officer James O'Brien Case No: 1:05-cv-259

Josephine Amatucci of Wolfeboro, New Hampshire hereby asserts the following claims against

the defendants in the entitled action:

  (1) violation of 42 U.S.C. 1983: conspiracy

  (2) violation of 42 U.S.C. 1983: arrest and deten.tion

  (3) malicious prosecution

  (4) battery

  (5) *intentional infliction of emotional distress*

  (6) negligent infliction of emotional distress

  (7) supplemental state claims

JURISDICTION

/

1. Jurisdiction of this court arises under 28 U.S.C. secs 1331, 1337, 1343 (a) and 136; 42 U.S.C. secs. 1983, 1985, 1986 and 1988; and 18 U.S.C. 1961-1968. To hear and adjudicate state law claims.

PARTIES:

2. Plaintiff, Josephine Amatucci is a citizen of the United States and a resident of Wolfeboro, New Hampshire.

3. Defendant Pauline Maloney, a resident of Wolfeboro, New Hampshire, resides at 188 Stoneham Road, Wolfeboro, New Hampshire, 03894.

4. Defendant Norman Bolduc a summer resident of Wolfeboro, Sandy Lane New Hampshire, living at 61 Lawrence Street, Danvers, Massachusetts, 01923.

JURY TRIAL DEMANDED

FACTS:

5. Defendant Pauline Maloney has been harassing Plaintiff for years. The harassment began when Maloney's grandson was driving his golfcart on Plaintiffs driveway, day and night. and after Plaintiff tried reasoning with his parents and grandparents, and to no avail, Plaintiff called the police, and they told the boy never to come on Plaintiff's driveway again or they would take the golfcart away. That's when the harassing began.

6. Maloney lives next door to Plaintiff and her brother Norman Bolduc lives in the back of Plaintiffs house. We all live across from the beach.

7. When going to the beach, instead of leaving her car in her driveway, and walking across the road to the beach, Maloney drives her car to Plaintiffs' house, parks the car in front of Plaintiffs' driveway, then walks across the narrow road, just steps to the beach.

8. Plaintiff calls the police to get her away, the police come, but they do nothing, and when they go away she comes right back. This has been going on for years, it doesn't stop.

and this goes on all day, every day.

9.    Other times of the day Maloney visits with her brother Bolduc, who lives in the back of Plaintiff's house, she drives her car over there and beeps the horn loud as she passes. These incidents happen all times of the day, constantly.

10.    At times she has a group of friends in the car, parks in front of Plaintiffs and she and her friends throw their beach stuff on Plaintiff's driveway, stand and chatter on Plaintiffs driveway, then they pick up their belongings and walk across to the beach, leaving the car blocking Plaintiff's driveway.

11.    While on the beach, Maloney can be heard telling the beach people they should park in front of Plaintiffs' driveway, and other remarks about Plaintiff. This all happens in front of Plaintiffs' house, with the beach people directly across, which makes Plaintiff very tense and anxious.

12.    Plaintiff tried everything to get her away for good. Plaintiff went before the Town Selectmen and was able to get the Town to agree to "No Parking" in front of Plaintiffs' driveway. Plaintiff also had a letter from the Department of Transportation stating that Plaintiffs' driveway was legal and no one had a right to block the driveway. The police still refused to give her a ticket, and she still parked there in defiance. Plaintiff heard her threaten one police officer with the statement that he better watch his step because she knew someone "high up in the ladder of the department", and she asked for his badge number.

13.    Plaintiff also had trouble with defendant Bolduc, who is Maloneys brother. Bolduc insisted on parking his golfcart on Plaintiffs ' property. He would park his golfcart, leave his dog inside the golfcart and walk across the road to the beach. The dog would bark constantly. Plaintiff could not get Bolduc off her property, and not even the police could help.

14.     Finally on September 10, 2001  Plaintiff took Bolduc to court.  In court  the judge ordered  Bolduc to stay off  Plaintiffs' property.

15..    The harassing, continued with Maloney still blocking Plaintiffs driveway..

16.     Also,  defendants  would wait for Plaintiff to leave her house and they she would put a sign on Plaintiffs' house which read "Bitch Parking Only."

17.     Or, defendants  would put "House For Sale" signs on Plaintiffs' house.

18.     Maloney complained about Plaintiff to the Town, constantly.   She  reported to the Health Inspector that Plaintiffs' septic system was not working.  The Town Health Inspector was obligated to check it out.   He didn't find anything wrong with the septic system, He told Plaintiff it was Maloney who put in the complaint, and other complaints, as she was driving the town crazy.  He asked why Maloney would be doing such a thing.   This was a very very serious gesture on her part, because had Plaintiffs septic system broken down, and she reported it to the Town, Plaintiff could have been ordered out of her house.  It  could have been very serious.

19.     Maloney complained to the Town that Plaintiff had two mailboxes.  Plaintiff had a legal accessory apartment, justifying two mailboxes.  Maloney ordered the town and the superior court judge to order Plaintiff to remove one mailbox.

20.     When Plaintiff was renovating her property defendants insisted to the town that Plaintiffs property  should be torn down, not fixed.  They told the Town Plaintiffs' house was not habitable.

21.     Plaintiff asked Police Officer Keaton to take a letter to Maloney, ordering her to stay away from Plaintiffs' property.

22.     Bolduc in the meantime had destroyed two outhouses in back of Plaintiffs' house, which Plaintiff had a legal right to use them.   On November 3, 2003 Plaintiff  visited Attorney

Hanson  to craft a letter to Bolduc demanding him to pay for the destruction of the outhouses.

23.          At the same time with the suggestion of the Police,  Plaintiff took  Maloney to Court to

get a Stalking Order on her.  On November 12, 2003, Plaintiff went to court for the Stalking

Order.  In court  Maloney  asked for a Stalking Order also, Plaintiff did not object, because she

never harassed Maloney, and thought it was harmless.   Therefore, the Judge ordered Plaintiff

and Maloney  not to have any communication with each other, and each others "family".

"family" meaning:

> One (1) or more persons having a common domestic bond who live
> together in ONE (1) DWELLING UNIT,  as a traditional family or its
> functional equivalent, headed by one (1) or more resident persons
> who have authority over the care, functioning or management of
> their common household.

24.          Plaintiff assumed Bolduc would be in court that day,  with his sister Pauline

Maloney.  The Attorneys' letter to Bolduc was not ready, so Plaintiff crafted a letter herself

and took it with her to court, to give it to Bolduc.  Bolduc was not present in court so Plaintiff

mailed the letter the next day, which was November 13, 2003.

25.          On November 13, 2003, the court mailed out the final order for the "stalking order".

The final order  added the word "relatives" to the order.

26.          Plaintiff received the final order November 15, 2003,  two days after she mailed the

letter to Bolduc.  Bolduc is  a "relative" of Maloney's, he is her brother.  However, before the

fifteenth of November, which was when Plaintiff received the final order, there was no way

Plaintiff would know she could not communicate with the "relatives"  of Maloney.  The word

"relatives"  was never mentioned in court on November 12th, by the judge.  The judge just

mentioned "family".

27.          After receiving the final order, Maloney and her brother Bolduc, went to the police

station and told the police that Plaintiff had violated the Stalking Order by writing to Bolduc.

defendants spoke with Officer O'Brien.

28.    Defendants signed a criminal complaint against Plaintiff, setting in motion the arrest

and incarceration of Plaintiff. And by doing so, defendants played an active part in the initiation

of the criminal proceedings of Plaintiff Plaintiff was arrested and incarcerated. //

29.    On December 29, 2003 Defendant O'Brien and his supervisor Officer Hamilton

came to Plaintiff's house and arrested Plaintiff, and took her to jail.

COUNT 1: VIOLATIONS OF 42 U.S.C. 1983: CONSPIRACY

30.              To state a claim under Section (s) 1985(3) a plaintiff must allege
the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive
a person or class of persons, directly or indirectly, of the equal protection
of the laws or of equal privileges and immunities under the laws, (3) an
overt act in furtherance of the conspiracy, and (4) either (a) an injury to
person or property, or (b) a deprivation of a constitutionally protected right
or privilege. See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)

31. The conspiratorial purpose was malice, to avoid a civil suit, and Bolduc possibly

having to pay damages for destroying the outhouses, defendants conspired to have Plaintiff

falsely arrested.

32.    Plaintiff was deprived of her liberty without due process of law and right to equal

protection of laws, and due course of justice was impeded in violation of the fifth and fourteenth

Amendment of the Constitution of the United States and 42 U.S.C. sec. 1983 and 1985.

33.    Defendants made a false statement of a material fact, to the police, as to Plaintiff

violating the Stalking Order, with knowledge of its falsity, to the Plaintiff's detriment, with

6

damages to Plaintiff of false arrest and detention, as a direct result of these acts.

34.     Defendants knew that "relatives" was not mentioned in Court, so Plaintiff could not

possibly have known she was not to communicate with the "relatives" of Maloney, on

November 13th, when she mailed the letter to Bolduc..

35.     The scheme of the conspiracy was (1) to make null and void the demand letter for

restitution for the destruction of the "outhouses". (2) to avoid a lawsuit. (3) and personal
ulterior motives.

36.     A true purpose to effect the criminal result and recklessly cause emotional and physical

harm to Plaintiff by her arrest and incarceration.

37.     Plaintiff was handcuffed and searched by an unknown person at the jailhouse.

38.     Defendants possessed a purposeful mental state to every element of the underlying

crime.

39.     Defendants misrepresentations were persuasive to the police and caused Plaintiff to

be arrested and incarcerated.

Noonan v. Fdic - Danca v. Taunton

> Where two or more persons act in concert, each will be jointly
> and severally liable for the tort.  The gist of a civil action of this
> sort is not the conspiracy, but the deceit or fraud causingdamage
> to the plaintiff, the combination being charged merely for the purpose
> of fixing joint liability on the defendants.  For harm resulting to a third
> person from the tortious conduct of another, one is subject to liability
> if he (a) does a tortious act in concert with the other, or pursuant to a
> common design with him. There is malice, intent, knowledge and other
> conditions of the mind of a person

New England Foundation Co. v. Reed, 209 Mass. 556<br>Payton v. Abbott Labs

> A person is guilty of conspiracy, if, with a purpose that a crime defined
> by statute be committed, he agrees with one or more persons to commit
> or cause the commission of such crime, and an overt act is committed by
> by one of the conspirators in furtherance of the conspiracy.  RSA 629:3,1

State v. Chaisson, 123 N.H. 17, 24 (1983)

WHEREFORE,  Plantiff demands judgement for the conspiracy against all the defendants for actual, general, special, compensatory damages in the amount of $200,000 and further demands judgement against each of said defendants, for punitive damages, plus the costs and such other relief deemed to be just and equitable.

COUNT 2;   VIOLATIONS OF 42 U.S.C. 1983:  ARREST AND DETENTION

40.    At all times relevant herein, the conduct of the defendants were subject to 42 U.S.C.

secs 1983m 1985m 1986m abd 1988.

        (a) by depriving Plaintiff of her liberty without due process of the
           law, by having Plaintiff taken into custody and holding her there
           against her will.

               County of Sacramento v. Lewis 523 U.S,. 833 (1998).
               Youngberg v. Romeo 457 U.S. 307,

        (b) by making a search of her without her consent.
        (c)  by conspiring for the purpose of impeding and hindering the
           due course of justice.
        (d)  by refusing or neglecting to prevent such deprivations, therefore,
           depriving Plaintiff of her rights, privileges, and immunities as
           guaranteed inthe Fourth, Fifth, and Fourteen Amendments to the
           Constitution of the United States.

41.    The Supreme Court reasoned that since the common law had recognized the casual

link between submission of a complaint and ensuing arrest,  defendants are guilty of

Plaintiffs false arrest and incarceration.

42..    Plaintiff feels there is a real and immediate threat  of repeated injury,  as recently

defendant displayed malice toward Plaintiff in a newspaper article.

43.    Therefore,   It cannot be assumed that the defendants will conduct their activities within

8

the law, considering the regularity of the defendants abusive and threatening conduct in the past
and now.

Hibma v. Odegaard 769
Monroe v. Pape


A claim for false arrest and detention is not limited to the actions
of police officers. A claim for false arrest can be sustained against
a person who instigates or directs an arrest or a detention made by a
police officer who is carrying out a complainants' request.

Vernon v. Phillips
Davern v. Drew
Eisenkra v. Armstrong
Barnes v. Bolhorst
Celnick v. Feitag
King v. Crossland savings bank


## COUNT 3:  MALICIOUS PROSECUTION

44.     Defendants instituted criminal process against the plaintiff with malice:

(a) defendants played an active part in the initiation
of criminal proceedings;
(b) defendants signed the criminal complaint against Plaintiff.

45.  The charges were not based on a  state of facts  to believe Plaintiff was not
guilty.

46.     Defendants instigated and participated in the prosecution by pressing police
to arrest and apply for a complaint for an improper purpose i.e. using court proceedings
primarily to gain an advantage, because of hostility and ill will.

47.     The criminal proceeding terminated in favor of the Plaintiff when the Prosecutor
recommended the dismissal of the charges, and the court accepted the recommendation
and dismissed the charges against Plaintiff.

9

Votrellas v. Viveiros 410 Mass. 314, 318 (1991). "A dismissal of a criminal complaint by the court entered by the prosecutor satisfies the requirement that the criminal prosecution has been terminated.

Sarvis v. Boston Safe Deposit and Trust Co. 1994
Wynne v. Rosen 391 Mass. 797

WHEREFORE, Plaintiff Amatucci demands judgement against all defendants for injuntive and actual, special, compensatory damages in an amount deemed at time of trial to be fair, and appropriate.

Defendants malicously used a "legal process" to accomplish some ulterior purpose which it was not designed or "intended" or which was not the legitimate purpose of a particular process employed.

Carroll v. gillespie-Jones v. Brocton, Quaranto v. silverman

A person may be liable for false imprisoment not only when the person's own acts directly impose a restraint upon the liberty of another, but also when that person, by providing information causes such restraint to be imposed.

Kajavainen V. Buswel
Mezullo v. Maietz

48. If the act is done with the intent to confine another, and such act is the legal cause of

confinement to another, it is immaterial whether the act directly or indirectly causes

confinement.

Sarvis v. Boston SateDeposit and Trust Co.

COUNT 4:   BATTERY

49. Without the consent of Plaintiff, plaintiff was intentionally, harmfully, and offensively,

touched Plaintiff by handcuffing her, and dragging her outside to the police car without

shoes, with snow on the ground.

50.   Without the consent of Plaintiff, defendants indirectly caused an unknown corrections officer at the Carroll County jail to intentionally, harmfully, and offensively touch Plaintiff when searching her.

## COUNT 5:   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

51.   Defendants intentionally and deliberately inflicted emotional distress on Plaintiff by maliciously prosecuting Plaintiff, or by abusing the lawful process by unlawful purpose, violating Plaintiffs' constitutional rights, or by falsely arresting and imprisoning the Plaintiff, conspiring and interfering with Plaintiffs' civil rights by threats, or  intimidation, or knew or should have known that emotional distress was the likely result of their conduct.

52.   Defendants conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

53.   The actions of the defendants were the cause of Plaintiffs distress.

54.   The emotional distress sustained by Plaintiff was constant and over a period of years of harassment,  severe and of a nature  that no reasonable man could be expected to endure.

Agis v. Howard Johnson Co. 371 Mass. 140, 145

55.   As a result of the defendants' extreme, constant, and outrageous conduct, Plaintiff was, and with a high degree of likelihood, will continue to be emotionally distressed due to the intentions of defendants.

> "Extreme and outrageous conduct is not required if the emotional
> distress resulted from the commission of another tort.

//

"American Velodur Metal, Inc. v. Schinabek  30 Mass. App Ct. 460

56.     As a result Plaintiff will continue to suffer mental pain and anguish, severed

emotional trauma, embarrassment and humiliation.

WEREFORE;  Plaintiff demands judgment, in the amount deemed by this Court to be just
and in any other way in which the Court deems appropriate.


## COUNT 6:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

57.     As a continuation of 49.

Defendants Maloney and Bolduc negligently inflicted emotional distress on Plaintiff,

by conspiring and initiating a false arrest and incarceration.

Plaintiff suffered emotional distress when defendants breached their duty as police

officer's to perform a professional service in such a manner as not to inflict emotional distress

to Plaintiff.

Plaintiff was, and, with a high degree of likelihood will continue to be inflicted

with emotional distress due to the negligence of defendants.

WHEREFORE,  Plaintiff demands judgement for the false arrests and detention against

defendants, jointly and severally, for actual, general, special, compensatory damages, and

further demands judgement against each of said defendants, jointly and severally, for punitive

damages, plus the costs of this action, including attorney fee's and relief deemed to be just

and equitable.


## COUNT 7:  SUPPLEMENTAL STATE CLAIMS

58.     The acts of conduct of Defendants constitute false arrest, false imprisonment,

malicious prosecution, defamation and invasion of privacy-casting in a false light, under the laws of the State of New Hampshire, and this court has supplemental jurisdiction to hear.

Plaintiff requests a trial by jury on all issues raised in this action triable by jury as a matter of right.

WHEREFORE, the Plaintiff request that this court:

(a) award compensatory damages to Plaintiff

(b) award costs of this action to the Plaintiff

(c) award reasonable Atttorneys fees and costs to the Plaintiff

(d) award of 200 thousand dollars to Plaintiff

(e) award such other and further relief as this court may deem appropriate .

Punitive damages are reasonable in Sec. 1983 suit where defendants conduct is motivated by evil motive, or intent, or where it involves recekless or callous indifference to Plaintiff's federally protected rights.  Smith v. Wade 461 U.S. 30m-50-51 (1983) Clark v. Taylor, 110 F. 2nd 4, 14 (lst cir. 1983).

Respectfully,

*Josephine Amatucci*

Josephine Amatucci
P.O. Box 272
Wolfeboro Falls, N.H. 03896
603-569-2429

June 30, 2006

16

13